1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

WILLIAM L HARRIS ,

7                           Plaintiff,

8          v.

CITY OF KENT et al.,

9

10                          Defendants.

Case No. 2:20-cv-01045-TLF

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

11          This matter comes before the Court on plaintiff's motions to amend (Dkt, 43, 63),

12  plaintiff's second motion for summary judgment (Dkt. 45), defendants Thormburg and

13  JLL Property Management's motion for summary judgment (Dkt. 46) and defendants

14  Officer Reed and City of Kent's cross-motion for summary judgment (Dkt. 55). The

15  parties have fully briefed the issues before the Court. Dkt. 43, 45-51, 53-55, 57-63. For

16  the reasons set forth below, the Court GRANTS plaintiff's motions to amend (Dkt. 43,

17  63), DENIES plaintiff's motion for summary judgment (Dkt. 45), GRANTS defendants

18  Thormburg and JLL Property Management's motion for summary judgment (Dkt. 46)

19  and GRANTS in part and DENIES in part defendants Officer Reed and City of Kent's

20  cross-motion for summary judgment (Dkt. 55).

21                          PROCEDURAL BACKGROUND

22          Plaintiff filed a motion for leave to amend seeking to file a third amended

23  complaint. Dkt. 43. While this motion was pending, plaintiff filed his second motion for

24

25

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -
1

summary judgment. Dkt. 45. The named defendants in this action also filed motions for summary judgment. Dkt. 46, 55. After the parties briefed the pending motions for summary judgment, plaintiff filed a fourth motion to amend the complaint. Dkt. 63.

Plaintiff's Fourth Amended Complaint is factually identical to plaintiff's Third Amended complaint. The only changes are: plaintiff's Fourth Amended Complaint adds as defendants Tom Clark and Jason Nixon, based on the same facts alleged in the Third Amended Complaint; the Fourth Amended Complaint adds a claim for negligence based on the same facts. Dkt. 43, 63.

Pursuant to Fed. R. Civ. P. 15(a), the Court grants plaintiff's latest motion to amend and proceeds with plaintiff's Fourth Amended Complaint as the operative complaint. In light of the parties' briefing and to prevent prejudice to defendants, the Court will consider the merits of the pending motions for summary judgment as applied to the facts alleged in the Fourth Amended Complaint. An amended pleading operates as a complete substitute of the original complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Accordingly, the Court will only consider factual allegations raised in the Fourth Amended Complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled in part on other grounds*, *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

<u>FACTUAL BACKGROUND</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutionally protected rights.

The Fourth Amended Complaint alleges the Kent Police Department is aware that a number of police officers have been intentionally violating people's rights and has

failed to take action or institute appropriate training. Dkt. 63 at 13-14. The complaint also states that other officers and supervisors failed to intervene while Officer Reed allegedly violated plaintiff's rights. *Id*. at 13.

Plaintiff alleges that on December 15, 2019 Officers Jacob Reed and Jason Nixon arrested him for having an electrical cord running from his vehicle to an electrical outlet, for failing to exit his vehicle quickly enough and for tampering with a light pole. Dkt. 63 at 16. Plaintiff alleges that the officers used tactical hand control techniques to forcibly remove plaintiff from his vehicle and placed severely tight hand cuffs on plaintiff causing excruciating pain. *Id.* Plaintiff also claims that his request to speak to Officer Reed's supervisor was denied. *Id*. Additionally, plaintiff alleges that Sergeant Clark approved of the arrest. *Id*. at 17.

The complaint alleges that defendant Thormburg knew that plaintiff was not stealing electricity because the light post has "dawn to dusk, cost-saving, kill switch technology." Dkt. 63 at 15. Plaintiff also contends that defendant Thormburg sought to cover his conduct by sending vendors to remove the outlet after plaintiff's arrest. *Id.*

A. <u>Video Recording</u>

During the events underlying this litigation, Officers Reed and Nixon were wearing body-worn cameras. Dkt. 16, 17, 49.

The footage from Officer Reed's body camera begins while Officer Reed was still in his patrol vehicle, before he approached plaintiff's parked vehicle. Officer Reed's Body-Worn Camera Footage; Dkt. 47-2 at 00:08. The footage shows Officer Reed approached plaintiff's vehicle with a flashlight and attempted to look into the vehicle. *Id*. at 00:39-00:52. Officer Reed then knocked on the back-passenger side window. *Id* at

00:52-01:03. After knocking, Officer Reed took a step away from the vehicle and put on a pair of gloves. *Id.* at 01:00-01:16.

After waiting about twenty seconds, Officer Reed knocked on the window again and stated "Let's go open the door man. I can't see what you're doing and you're freaking me out, so open the door." Dkt. 47-2 at 01:16-01:23. Officer Reed waited approximately ten seconds before stating "Okay stop digging around or I'm going to break the window and pull you out." Dkt. 47-2 at 01:23-01:39. From inside the vehicle, plaintiff appeared to say, "I'm getting my shorts." *Id.* at 01:38-01:39. Officer Reed stated "I can't hear you. Open the door." *Id.* at 01:39-01:43. Plaintiff continued to speak, but it is unclear what plaintiff said. *Id.* at 01:43-01:45.

Next, Officer Reed said, "You have three second before I break this window." Dkt. 47-2 at 01:45-01:49. Plaintiff continued to state that he was just getting his shorts. *Id.* at 01:45-01:50. Officer Reed counted one and waited five seconds before counting two. *Id.* 01:48-01:55. During this time, plaintiff responded, "I'm getting my shorts" and "Come one man I'm a former police officer myself, can't I just get my shorts on." *Id.* at 01:54-02:03. Officer Reed responded "No, open the door now." *Id.* at 02:03.

Plaintiff opened the door and repeated "I'm just getting my shorts man." Dkt. 47-2 at 02:03-02:08. Once plaintiff opened the door, it appears that he was sitting in his vehicle covered with a blanket from the waist down. *Id.* at 02:08. Officer Reed instructed plaintiff to get out of the vehicle. *Id.* at 02:11. Plaintiff responded, "But I've got nothing on." *Id.* at 02:11. Officer Reed told plaintiff "Step out or I'm going to drag you out" and counted one. *Id.* at 02:11-02:13. Plaintiff stated, "I'm a former police officer myself, all I'm putting on is some shorts officer, can I get some dignity and put my shorts." *Id.* at

02:13-02:19. At this point Officer Reed informed plaintiff that he was being audio and video recorded. *Id* at 02:19.

Plaintiff reiterated that he would like to put his shorts on. Dkt. 47-2 at 02:25. Officer Reed asked plaintiff where his shorts were located, and plaintiff indicated that they were in the back of the car under the blanket. *Id.* at 02:22-02:25. Officer Reed declined plaintiff's request, stating "you are not digging for anything inside this car" and instructed plaintiff to exit the vehicle. Dkt. 47-2 at 02:25-02:30. Officer Reed told plaintiff that plaintiff was impeding Officer Reed's investigation and that he would arrest plaintiff for obstruction if plaintiff did not exit the vehicle. *Id.* at 02:30-02:38.

Plaintiff sat up on the edge of the seat facing out of the vehicle, holding the blanket that was covering his legs, stating that he is a former police officer and that he just wanted to put his shorts on. Dkt. 47-2 at 02:38-02:43. Officer Reed grabbed plaintiff's right wrist and shoulder to guide him out of the vehicle and instructed plaintiff to put his hands behind his back. *Id.* at 02:43-02:50. Once plaintiff was standing, Officer Reed stood behind him holding plaintiff's wrists and instructed plaintiff to drop the items in his hands. *Id.* at 02:50-03:00. Plaintiff said that he was just trying to put his shorts on, that he had been parked there for months without a problem and that he wasn't doing anything wrong. *Id.* 03:00-03:20. Officer Reed explained that plaintiff was impeding his investigation and directed plaintiff to interlace his fingers. *Id.* at 03:00-03:20.

Officer Reed asked Officer Nixon to assist him in placing hand cuffs on plaintiff's wrists. Dkt. 47-2 at 03:27-03:33. Officer Nixon helped hold plaintiff's hands while Officer Reed applied the handcuffs. *Id.* While the officers were handcuffing plaintiff, he asked

why he was being arrested, and Officer Reed informed plaintiff that he was being

arrested for obstructing Officer Reed's investigation. *Id.* at 03:33-03:42.

After the officers secured the handcuff's on plaintiff, while he was still standing

next to the vehicle, Officer Reed informed plaintiff that Officer Nixon would grab

plaintiff's shorts from the vehicle. *Id.* at 03:55-03:57. Plaintiff told Officer Nixon where he

could find his shorts, Officer Nixon grabbed plaintiff's shorts and assisted him in putting

on the shorts while still handcuffed. *Id.* at 03:57-4:40. Once plaintiff's shorts were on,

Officer Reed walked plaintiff to Officer Reed's patrol vehicle, asked plaintiff to sit in the

vehicle and read plaintiff his Miranda Rights from a booklet. *Id.* at 4:40-5:40. While

Officer Reed read from his booklet, plaintiff requested that a police sergeant come to

the scene. *Id.* at 05:32. Officer Reed did not respond to plaintiff's request.

After reading from the booklet, Officer Reed explained to plaintiff that he

observed electrical cords running from a light pole to plaintiff's vehicle which constituted

theft of services. Dkt. 47-2 at 05:42-05:48. Plaintiff responded that if there was an issue

with the power cords, he would take care of it. *Id.* at 05:48-05:55. Officer Reed recorded

plaintiff's contact information and informed him that he was being arrested for

obstruction. *Id.* at 05:55-6:58. Officer Reed informed plaintiff that he could request to

speak to a sergeant in jail and closed the door to the patrol car. *Id.* at 06:52-07:00. The

officers then checked the camper trailer and another vehicle parked near plaintiff's

vehicle, but found no occupants in the vehicles. *Id.* at 07:05-11:15.

While still at the scene of the arrest, Officer Reed received a phone call. Dkt. 47-

2 at 11:55. Officer Reed answered and stated "Yeah, perfect, perfect, so you are

responsible for the shopping center up here? Do you mind if I put you on speaker phone

and record you?" *Id.* at 11:55-12:15. Officer Reed then put the phone on speaker and

had the following conversation:

> Officer Reed: Um so, now that I've got you on speaker phone, I just wanted to let you know you are being audio and video recorded even though it's just on the phone. So, you guys are responsible for the whole property complex up here?
>
> Caller: Yes
>
> Officer Reed: Okay, so we have a camper trailer and a car parked next to the camper trailer that is plugged into one your guys' streetlights, like the parking lot lights and they are stealing electricity.
>
> Caller: Okay
>
> Officer Reed: And we were just wondering … I've got one of them detained in the back of my patrol car and I was just wondering if you wanted to prosecute for theft.
>
> Caller: Yes
>
> Officer Reed: Okay, um also, so he is going to go to jail because he wasn't very happy with the police asking him questions in the first place, so as long as you are willing to prosecute, I will get your information. I can't tow his car however; it's just going to stay here. I'll unplug the thing if I can do it safely, but it's going to be your guys' responsibility to get it moved if you need it moved.
>
> Caller: Yeah, we'll get it towed. I'll get ahold of my day porter.
>
> Officer Reed: Okay just so you can tell him too, there's also like a 20-foot camper trailer here that's plugged into the same power pole.
>
> Caller: That's unrelated to the party that you are detaining?
>
> Officer Reed: Correct yup
>
> Caller: Alright

Dkt. 47-2 at 12:35-13:58. Next, Officer Reed wrote the callers contact information. Dkt.

47-2 at 13:58-15:30. The caller identified himself as Curt Thormburg, the property

manager for JLL Property Management. *Id.*

1  When Officer Reed returned to his patrol vehicle, he removed his body worn

2 camera and placed it on the ceiling of the vehicle so that he and plaintiff would be on

3 screen during the drive to the jail. Dkt. 47-2 at 29:41-30:05. While Officer Reed was

4 writing on a notepad in the patrol vehicle, plaintiff requested to speak to the sergeant,

5 watch commander, the division commander and chief of police. *Id.* at 37:14-37:20.

6 Officer Reed placed a call informing the recipient of the call that plaintiff was requesting

7 to speak to a sergeant. *Id.* at 39:20-39:40. Officer Reed informed plaintiff that Officer

8 Reed's sergeant declined to speak with plaintiff. *Id.*at 39:40-39:48. During the drive to

9 the jail, plaintiff requested that Officer Reed release plaintiff's handcuffs because they

10 were uncomfortable and cutting into his arm, Officer Reed informed plaintiff that he

11 could sit sideways or place his hands in the cutouts. *Id.* at 40:02-47:09. Plaintiff sat

12 sideways for the rest of the drive but did not make any further comments or requests

13 regarding the handcuffs. *Id.* at 47:09-55:32.

14        <u>DISCUSSION</u>

15  Summary judgment is supported if the materials in the record "show that there is

16 no genuine issue as to any material fact and that the movant is entitled to judgment as a

17 matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party

18 bears the initial burden to demonstrate the absence of a genuine dispute of material fact

19 for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute

20 concerning a material fact is presented when there is sufficient evidence for a

21 reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

22 *Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is

23 "relevant to an element of a claim or defense and whose existence might affect the

24

25

outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id.* If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

42 U.S.C. § 1983 provides "a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct

complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

To state a claim under Section 1983, a plaintiff must set forth the specific factual basis upon which the plaintiff claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1982). Vague and conclusory allegations of officials participating in a civil rights violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of Regents,* 673 F.2d 266, 269 (9th Cir. 1982).

A government official is entitled to qualified immunity under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howard*, 566 U.S. 658, 664 (2012)). A right is "clearly established" when existing precedent places the "statutory or constitutional question beyond debate" such that every reasonable officer would understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a

constitutional right" then summary judgment granting qualified immunity is not

appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

    A.  <u>Fourth Amendment Claims - Unlawful Search and Unlawful Arrest</u>

      1.  <u>Initial Stop</u>

The Fourth Amendment right to be secure from unreasonable searches and

seizures "applies to all seizures of the person," including initial and brief seizures falling

short of a traditional arrest. *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th

Cir. 2007) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Such

seizures, however, do not violate the Fourth Amendment "if the officer has a reasonable

suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Berber-*

*Tinoco*, 510 F.3d at 1087 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

To determine whether a seizure was justified by a reasonable suspicion, the

Court must "consider whether, in light of the totality of the circumstances, the officer had

a particularized and objective basis for suspecting the particular person stopped of

criminal activity." *Id.* (internal quotations omitted). The "totality of the circumstances"

may include an officer's "objective observations, information from police reports, if such

are available, and consideration of the modes or patterns of operation of certain kinds of

law-breakers." *Id.*

Officer Reed reported that while driving in the Panther Lake Shopping Center he

noticed electrical cords running from a light pole to a black SUV and a camper trailer.

Declaration of Officer Reed (Reed Decl.), Dkt. 16 at ¶ 6; Case Report, Dkt. 47-1. Officer

Reed also stated that the cords appeared to be illegally tapped to the light pole's power

source. Dkt. 16 at ¶ 6; Dkt. 47-1. Officer Reed believed this was a crime and potential

safety hazard. Reed Decl., Dkt. 16 at ¶ 6. The pictures taken at the scene of the incident show that a panel from the light pole had been removed and an outlet had been connected to the internal wiring of the light pole. Dkt. 47-1.

Pursuant to RCW 9A.56.050, it is a gross misdemeanor to steal electricity. RCW 9A.56.050; *See, State v. Kolisynk*, 49 Wn.App. 890, 894 (1987) (finding that electricity is a service that can be stolen). When Officer Reed observed that someone had tampered with a light pole to remove the access panel and connect an electrical outlet to the internal wiring, Officer Reed had reasonable suspicion that someone was stealing electricity. Additionally, when Officer Reed observed the cords leading from the light pole to a parked vehicle, he had a sufficient particularized and objective basis for believing that the occupant of the vehicle was stealing electricity from the light pole. Based on the undisputed facts in the record, Officer Reed had sufficient reasonable suspicion to conduct a brief investigatory stop of the occupant of the vehicle. Accordingly, no questions of fact remain regarding whether Officer Reed had sufficient reasonable suspicion to conduct an investigatory stop of plaintiff.

2. Arrest

A claim for unlawful arrest is cognizable under 42 U.S.C. § 1983, as a violation of the Fourth Amendment, only if the arrest was without probable cause or other justification. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). Probable cause exists when an officer has reasonably trustworthy information of facts and circumstances that are sufficient to justify a reasonably cautious person's belief that an offense has been or is being committed. *Stoot v. City of Everett*, 582 F.3d 910, 918 (2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1946)). Probable cause

1   is an objective standard, dependent upon the reasonable conclusions to be drawn from

2   the facts known to the arresting officer at the time of the arrest. *Devenpeck v. Alford*,

3   543 U.S. 146, 152 (2004). The arresting officer's subjective reason for the arrest or

4   state of mind are irrelevant in determining whether probable cause existed. *Id.* at 153.

5        Plaintiff was arrested for theft in the third degree and obstructing a public officer.

6   Dkt. 47-1; 47-5; 47-6.

7        Pursuant to KCC 9.02.630, a person is guilty of obstructing a public officer if, with

8   knowledge that the person is a public officer, he or she: " … (2) intentionally hinders or

9   delays a public officer by disobeying an order to stop given by such officer; (3)

10  intentionally refuses to cease an activity or behavior that creates a risk of injury to any

11  person when ordered to do so by a public officer … " KCC 9.02.630(A).

12       For purposes of this section, a public officer is any individual responsible for

13  enforcing the Kent City Code and empowered to make arrests or issue citations under

14  the code or individuals responsible for enforcing the criminal laws of the state. KCC

15  9.02.630(C).

16       It is undisputed that Officer Reed was acting in his capacity as an officer for the

17  City of Kent Police Department. Accordingly, for purposes of the charge for obstructing

18  a public officer, Officer Reed was a public officer.

19       The video from Officer Reed's body worn camera shows that after approaching

20  plaintiff's vehicle, Officer Reed knocked on the window and took a step away from the

21  vehicle. After waiting about twenty seconds, Officer Reed knocked on the window again,

22  telling plaintiff to open the door. Officer Reed also told plaintiff that Officer Reed was

23  concerned for his safety because he could not see what plaintiff was doing in the

24

25

1    vehicle. Plaintiff did not open the door and Officer Reed instructed plaintiff to stop

2    digging around inside the vehicle. Officer Reed also told plaintiff that he could not see or

3    hear plaintiff through the car windows, again directing plaintiff to open the door.

4        After plaintiff opened the car door, plaintiff continued to argue with Officer Reed.

5    Officer Reed instructed plaintiff to exit the vehicle several times and plaintiff continued to

6    refuse to exit the vehicle. Additionally, plaintiff's hands were obscured by a blanket, and

7    plaintiff refused to comply with Officer Reed's instructions to drop the items in his hands.

8        The video shows that plaintiff was aware that Officer Reed was a police officer

9    because Officer Reed was wearing his police uniform and while still in the vehicle,

10   plaintiff referred to Officer Reed as "officer."

11       The undisputed evidence in the record shows that plaintiff knew Officer Reed

12   was a public officer acting within his official duties. Further, Officer Reed informed

13   plaintiff that Officer Reed was concerned for his safety because plaintiff appeared to be

14   searching for something in his vehicle. Plaintiff ignored Officer Reed's order to stop

15   looking for items in the vehicle and to exit the vehicle. Accordingly, the undisputed

16   evidence in the record shows that Officer Reed had probable cause to arrest plaintiff for

17   obstructing a public official.

18       Based on the foregoing discussion and the undisputed evidence in the record,

19   there remain no genuine issues of material fact regarding plaintiff's search and arrest.

20   The search and arrest in question in this litigation, do not constitute a cognizable claim

21   under 42 U.S.C. § 1983. Accordingly, plaintiff's claims for unlawful search and unlawful

22   arrest are dismissed against all defendants with prejudice.

23

24

25

B.  <u>Excessive Force</u>

Plaintiff's claim for excessive force may continue in this litigation against Officer Reed only. The excessive force claim is dismissed against all other defendants.

When an excessive force claim arises in the context of an arrest, the claim is most properly characterized as invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Tenn. v. Garner*, 471 U.S. 1, 5 (1985)). Determining whether the force used is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011).

There is no "easy-to-apply legal test" for determining whether the amount of force used was reasonable, instead the Court must analyze "the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). The ultimate question, regardless of the amount of force used, is whether the use of force and the officer's actions were reasonable under the circumstance presented. *Id*.

The United States Supreme Court set out the following factors to consider when evaluating the government interest at stake; (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. 396-97.

The Ninth Circuit has held that tight handcuffing can constitute excessive force, even if the handcuffing is a generally standard and appropriate practice. *Cortesluna v. Leon*, 979 F.3d 645, 655 (9th Cir. 2020) (citing *LaLonde v. County of Riverside*, 204

F.3d 947, 960 (9th Cir. 2000)). "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960. Additionally, while a plaintiff's injuries can be indicative of the amount of force used, physical injuries are not required to assert a claim for excessive force. *Cortesluna*, 979 F.3d at 654 (citing *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018)).

It is undisputed that Officer Reed handcuffed plaintiff in the course of the arrest. Plaintiff alleges that Officer Reed made the handcuffs so tight that plaintiff suffered bruising and swelling in his fingers and hands. Dkt. 63. The footage from Officer Reed's body-worn camera shows that plaintiff requested that Officer Reed loosen the handcuffs because they were beginning to cut into his skin. Dkt. 47-2 at 40:02-47:09. Officer Reed informed plaintiff that he could sit sideways or place his hands in the cutouts in the vehicle. *Id*. Officer Reed did not check or adjust the tightness of plaintiff's handcuffs. *Id*. In support of their motion for summary judgment, Officer Reed and the City of Kent submitted the Declaration of Sergeant Joseph Engman who opines that Officer Reed's handcuffing techniques complied with standard police training. Dkt. 57.

Based on the evidence in the record, there exist a genuine dispute of material fact regarding plaintiff's excessive force claim related to his handcuffing. The Ninth Circuit has explained that whether tight handcuffing constitutes excessive force is a fact-based determination that is most appropriately left to a jury's determination. Additionally, the question of whether, based on the totality of the circumstances, Officer Reed used excessive force by applying unreasonably tight handcuffs, will likely turn on the jury's determination of the creditability of the witnesses. Accordingly, questions of fact remain regarding whether Officer Reed's conduct violated plaintiff's rights.

Further, it is well established law that applying handcuffs in a manner that is so tight that they unreasonably injure a person's wrist constitutes use of excessive force. *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *LaLonde*, 204 F.3d at 960. Any reasonable officer in Officer Reed's position, would know that applying handcuffs in a manner that unreasonably injures a person is unlawful in the circumstances presented. Therefore, if a jury finds that Officer Reed applied handcuffs to plaintiff in a manner that unreasonably injured plaintiff, Officer Reed would not be entitled to qualified immunity.

Summary judgment is not appropriate on this claim against Officer Reed.

Plaintiff's complaint does not assert facts to show that Officer Reed's allegedly unconstitutional acts or omissions were in compliance with an official custom, policy or that any entity ratified Officer Reed's conduct. Dkt. 63. Accordingly, plaintiff's complaint fails to raise a cognizable claim against the City of Kent. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).

Based on the video footage from Officer Reed's body worn camera, Officer Nixon did not place the handcuffs on plaintiff and was not made aware at any point that the handcuffs were tight. Therefore, because there are no facts presented to support a claim that Officer Nixon personally participated in the alleged violation, he is not the appropriate defendant for this claim. Similarly, there is no evidence that Sergeant Clark participated in plaintiff's handcuffing or was otherwise aware of how tight the handcuffs were. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, plaintiff's claims for excessive force against Officer Nixon and Sergeant Clark are dismissed.

Finally, plaintiff's excessive force claim is dismissed against defendant's Thornburg and JLL Property Management, because there is no evidence that either of these defendants conspired with or entered into a joint action with Officer Reed to handcuff plaintiff. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001), cert. denied, 534 U.S. 1020 (2001).

C. Equal Protection Claims

Plaintiff's Equal Protection Claims are dismissed against all parties.

The Equal Protection Clause of the Fourteenth Amendment requires that the State treat all similarly situated people equally. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). To state a claim under Section 1983 for an Equal Protection violation, plaintiff must show that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.*

To prevail on an Equal Protection claim based on selective enforcement, a plaintiff must demonstrate that enforcement had a discriminatory effect and the officers were motivated by a discriminatory purpose. *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). To establish such discriminatory effect, a plaintiff must show that similarly situated individuals could have been investigated or prosecuted and were not. *Rosenbaum*, 484 F.3d at 1153 (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). Discriminatory purpose is established when plaintiff can show that the decision-maker selected or affirmed a particular course of action "at least in part because of, not merely in spite of, its adverse effect upon an identifiable group." *Rosenbaum*, 484 F.3d at 1153 (citing *Wayte v. United States*, 470 U.S. 598, 610 (1985)) (internal quotations omitted).

1    Plaintiff has failed to establish that Officer Reed selectively chose to investigate,

2    and arrest plaintiff based on impermissible grounds. Officer Reed reported that he

3    decided to investigate because he saw cords connected to a makeshift power outlet

4    which created a potential hazard. Dkt. 16 at ¶ 6; Dkt. 47-1. The footage from Officer

5    Reed's body-worn camera shows that three vehicles were parked near the outlet and no

6    one could be seen outside or near the vehicles. Dkt. 47-2. The video shows that Officer

7    Reed approached plaintiff's vehicle while Officer Nixon approached another vehicle to

8    check for occupants. Dkt. 47-2. After Officer Reed placed plaintiff in the patrol vehicle,

9    Officer Reed and Officer Nixon went to investigate the camper trailer that was also

10   plugged into the outlet, trying to contact any occupants. *Id.* Officers Reed and Nixon

11   found no occupants in the other vehicles parked near the outlet. *Id.*

12   There is no indication in the footage from body worn camera or any other

13   evidence in the record, that Officer Reed selectively commenced his investigation or

14   decided to arrest plaintiff on impermissible grounds such as race. Additionally, Officers

15   Reed and Nixon did not choose to investigate only plaintiff, they attempted to contact

16   the occupants of the other vehicles as well, but there were no occupants at the time.

17   Officer Reed's conduct does not amount to a discriminatory investigation and

18   arrest in violation of the equal protection clause. Because there is no evidence in the

19   record showing that Officer Reed's decision to investigate and then subsequently arrest

20   plaintiff were based on plaintiff's race, no genuine issues of material fact remain

21   regarding plaintiff's Equal Protection claims.

22   Based on the foregoing discussion, plaintiff's Equal Protection Claims are

23   dismissed with prejudice against all defendants.

24

25

D.  Civil Rights Act of 1964 – Public Accommodations

Plaintiff's claim under Title II of the Civil Rights Act of 1964 alleging that the defendant's unlawfully denied plaintiff access to a de facto public accommodation is dismissed with prejudice.

Title II of the Civil Rights Act of 1964 states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). In order to secure broad compliance with the Civil Rights Act, private individuals may initiate private litigation seeking injunctive relief to enforce the Act. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401 (1968). However, plaintiffs bringing actions under Title II of the Civil Rights Act of 1964 cannot recover damages as a remedy. *Id.*; *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1091 n. 4 (9th Cir. 2011).

Plaintiff seeks only monetary damages and is not seeking injunctive relief. Dkt. 63. Because the remedy plaintiff seeks is not available under Title II of the Civil Rights Act of 1964, plaintiffs claim pursuant to Title II of the Civil Rights Act of 1964 is dismissed.

E.  Defamation

Plaintiff's claims for defamation against defendants Thormburg and JLL Property Management are dismissed with prejudice. Plaintiff's claims for defamation against all other defendants are dismissed without prejudice and with leave to amend.

The district court should liberally construe a pro se litigant's pleading. *Boag v. MacDougall,* 454 U.S. 364, 365 (1982); *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987). Plaintiff alleges that Officer Reed and defendant Thormburg committed actionable defamation by allegedly calling plaintiff a thief. Dkt. 63. Plaintiff claims that by bringing his claim he is defending his constitutional rights. Dkt. 63. Accordingly, it appears that plaintiff is alleging a federal defamation claim under Section 1983.

To state a cognizable Section 1983 "defamation-plus" claim, a plaintiff must allege an injury to plaintiff's reputation from a defamatory statement, accompanied by an allegation of injury to a recognizable property or liberty interest. *Crowe v. County of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010). A plaintiff can meet this standard by alleging (1) "that the injury to reputation was inflicted in connection with a federally protected right" or (2) "that the injury to reputation caused the denial of a federally protected right." *Id.* (citing *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

  1. <u>Claim against Officer Reed and City of Kent</u>

Officer Reed and City of Kent's motion for summary judgment argues that plaintiff's defamation claim should be dismissed because plaintiff fails to identify a false statement purportedly made by Officer Reed and City of Kent. Dkt. 55. The motion also alleges that plaintiff fails to satisfy the other elements of a defamation claim. Dkt. 55.

Officer Reed and City of Kent's assertion that plaintiff has not produced evidence to satisfy the elements of defamation, by itself, does not meet their burden, as the moving party, to demonstrate that no genuine issues of material fact exists regarding plaintiff's defamation claims.

However, plaintiff's complaint fails to state a claim for defamation. Accordingly, the Court on its own motion, pursuant to Fed. R. Civ. P. 12(b)(6), will dismiss plaintiff's defamation claim against Officer Reed and City of Kent with leave to amend. *See, Reed v. Lierance*, 863 F.3d 1196, 1207 (9th Cir. 2017). In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires that the complaint include a short and plain statement of the claims showing that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (*citing Conley v. Gibson*, 355 U.S. 41 (1957)). The complaint must include more than bare assertions, labels, or formulaic recitations of the elements of the cause of action. *Twombly*, 550 U.S. at 555-57.

Plaintiff alleges that Officer Reed committed actional defamation by labeling him a "thief." Dkt. 63. However, plaintiff fails to identify an allegedly defamatory statement. Additionally, plaintiff fails to allege facts that would plausibly show injury to a federally protected right or the denial of a federally protected right caused by a defamatory statement. Accordingly, plaintiff's defamation claim against Officer Reed and the City of Kent is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

2.  <u>Claim against JLL Property Management and Defendant Thormburg</u>

JLL Property Management and Thormburg argue that plaintiff's defamation claim against them should be dismissed as a matter of law pursuant to RCW 4.24.510. Dkt. 46. JLL Property Management and Thormburg also request the Court impose statutory damages and grant reasonable attorney's fees pursuant to RCW 4.24.510. Dkt. 46, 58.

RCW 4.24.510 creates a statutory immunity to defamation claims arising from communications to a government agency regarding matters reasonably of concern to that agency. *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 907-08

(2021). Pursuant to RCW 4.24.510, parties prevailing under the statutory immunity are entitled to recover expense and reasonable attorney's fees incurred in establishing the defense, as well as $10,000 in statutory damages.

Based on plaintiff's allegations, it appears that plaintiff is attempting to bring a "defamation-plus" claim pursuant to 42 U.S.C. § 1983. State anti-SLAPP laws do not apply to federal claims; therefore RCW 4.24.510 is not an appropriate ground to dismiss plaintiff's Section 1983 claims. *Martinez v. California*, 444 U.S. 277, 284 (1980) (finding that defendants under 42 U.S.C. § 1983 cannot be immunized by state law); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (finding that state anti-SLAPP statutes do not apply to federal law causes of action).

However, plaintiff's Section 1983 defamation claim may be subject to dismissal on other grounds. A plaintiff may only bring a Section 1983 action against a defendant acting under color of state law. *Haygood*, 769 F.2d at 1354. A plaintiff may only bring a Section 1983 action against a private individual if the private individual conspired or entered into a joint action with a state actor. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001), cert. denied, 534 U.S. 1020. To allege a conspiracy, plaintiff must allege facts showing "an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (quotations omitted).

Plaintiff does not identify any particular defamatory statement that defendant Thormburg allegedly communicated. Instead, plaintiff alleges that Thormburg and JLL Property Management committed actionable defamation by agreeing to assist in plaintiff's prosecution. Dkt. 63. Plaintiff fails to allege any facts showing that Thormburg

conspired or agreed to defame plaintiff in a manner that would injure plaintiff's

constitutionally protected rights. Additionally, based on the footage from Officer Reed's

body-worn camera, and the remaining record, no issues of fact remain on this issue,

because any allegation that Thormburg conspired to violate plaintiff's federal rights is

unsupported by the evidence of record.

Based on the foregoing discussion, the Court dismisses plaintiff's defamation

claim against defendants Thromburg and JLL Property Management with prejudice.

Additionally, because RCW 4.24.510 is inapplicable to plaintiff's claims, the Court

denies defendants Thormburg and JLL Property Management's request for attorney's

fees and statutory damages.

F.  <u>Negligence</u>

Here plaintiff alleges a state law cause of action for negligence only against

Officer Reed and the City of Kent. Dkt. 63. Plaintiff's negligence claim is dismissed

without prejudice.

Officer Reed and City of Kent have submitted the declaration of Sergeant

Engman who opined that Officer Reed's conduct was proper and consistent with

standard police practices. Dkt. 57. The Court cannot draw inferences from the facts

presented and cannot decide the credibility of witnesses. *Anderson*, 477 U.S. at 255.

Sergeant Engman's testimony fails to establish that no genuine disputes of material

facts remain in this action.

However, because plaintiff's complaint fails to state a cause of action for

negligence against any defendant, the Court on its own motion, pursuant to Fed. R. Civ.

P. 12(b)(6), will dismiss plaintiff's negligence claim with leave to amend. *See, Reed v. Lierance*, 863 F.3d 1196, 1207 (9th Cir. 2017).

To prevail on a negligence claim, a plaintiff must show, (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury; and (4) breach of the duty as the proximate cause of the injury. *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879 (2021). In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires that the complaint include a short and plain statement of the claims showing that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (*citing Conley v. Gibson*, 355 U.S. 41 (1957)). The complaint must include more than bare assertions, labels, or formulaic recitations of the elements of the cause of action. *Twombly*, 550 U.S. at 555-57.

Plaintiff's complaint alleges that various defendants acted negligently, without providing plausible assertions of facts indicating whether the defendants owed plaintiff a duty, how they breached such a duty, the injury, and how such breach caused the resulting injury. Dkt. 63. Plaintiff's complaint fails to state a cognizable claim for negligence against any named defendant.

Accordingly, plaintiff's claim for negligence is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

G. <u>Conspiracy Against Rights</u>

Plaintiff's claim for conspiracy against rights pursuant to 18 U.S.C. § 241 fail as a matter of law and is dismissed.

Plaintiff alleges a cause of action pursuant to 18 U.S.C. § 241, which is a criminal statute. A private right of action does not exist for all injuries caused by violations of the

criminal code. *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 190 (1994) (noting that courts have been "quite reluctant to infer a private right of action from a criminal prohibition alone."). Unless "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source" the Court will not imply a private remedy for the federal statute. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). 18 U.S.C. § 241 does not create a private right of action and does not give rise to civil liability. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).

Based on the foregoing, plaintiff's claims under 18 U.S.C. § 241 are dismissed with prejudice because the statute does not create a private right of action.

H. Plaintiff's Other Claims

Plaintiff also attempts to bring a number of other claims, yet plaintiff lacks the proper standing to raise these claims and therefore they are dismissed with prejudice.

Generally, a litigant may only assert their own legal rights and cannot rest a claim for relief on the legal rights or interest of a third party. *Coalitions of Clergy v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002). However, the United States Supreme Court has recognized an exception to this general rule. *Id.* (citing *Powers v. Ohio,* 499 U.S. 400, 410-11 (1991)). Third party standing is proper if the litigant can establish that: (1) the litigant has suffered an injury in fact; (2) the litigant has a close relationship to the third party; and (3) there is some hinderance to the third party asserting their own rights. *Serena v. Mock,* 547 F.3d 1051, 1054 (9th Cir. 2008).

Plaintiff alleges that the City of Kent has a history of discrimination and violating people's rights. Dkt. 63. Plaintiff identifies several incidents involving other unrelated individuals that, plaintiff asserts, exemplify the racial animus the City of Kent has

allowed in the Kent Police Department. Dkt. 63. Plaintiff makes no allegations of any connection to show these cases are related to his causes of action or that he has third party standing to bring these claims. Plaintiff therefore lacks standing.

I. <u>Leave to Amend</u>

Pursuant to Federal Rule of Civil Procedure 15(a), after an initial period for amendment as of right, pleadings may be amended only with the opposing party's written consent or by leave of the court. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); *Desertrain v. City of Los Angeles,* 754 F.3d 1147, 1154 (9th Cir. 2014) ("[T]his policy is to be applied with extreme liberality.").

The Court must consider five factors when determining the propriety for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Desertrain*, 754 F.3d at 1154; *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

There is no evidence indicating that allowing plaintiff to file a final amended complaint will cause undue delay or prejudice to the opposing party. Additionally, plaintiff is proceeding pro se and pro se complaints are to be construed liberally. *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987).

"Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from representation of counsel." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). A pro se plaintiff's pleading is ultimately held "to a less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). These factors favor the Court exercising its discretion to grant plaintiff leave to amend.

The Court grants plaintiff leave to amend to correct the deficiencies identified in his state law negligence and Section 1983 federal defamation-plus claims against the City of Kent and Officer Reed. The Court will not grant further leave to amend, unless plaintiff can show good cause and gives sufficient reason justifying leave to amend. If plaintiff chooses to file an amended complaint, it must be legibly written or retyped in its entirety and contain the same case number. Any cause of action alleged in the original complaint that is not alleged in the amended complaint is waived. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled in part on other grounds*, *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

## CONCLUSION

Based on the foregoing discussion, plaintiff's motions to amend (Dkt. 43, 63) are GRANTED and plaintiff's Fourth Amended Complaint (Dkt. 63) is the operative complaint. Plaintiff's Second Motion for Summary Judgment (Dkt. 45) is DENIED. Defendants Thormburg and JLL Property Management's Motion for Summary Judgment (Dkt. 46) is GRANTED and the claims against defendants Thormburg and JLL Property are dismissed with prejudice. Defendant's Thormburg and JLL Property Management's request for statutory damages and attorney's fees is DENIED. Defendants Reed and City of Kent's Cross-Motion for Summary Judgment (Dkt. 55) is GRANTED IN PART and DENIED IN PART as set forth below:

- Plaintiff's Fourth Amendment Claim for excessive force during the arrest **may continue** in this litigation.

- Plaintiff's Fourth Amendment Claims for unlawful search and arrest are **DISMISSED with prejudice**;

- Plaintiff's Fourteenth Amendment Equal Protection Claims are **DISMISSED with prejudice**;

- Plaintiff's Civil Rights Act of 1964 – Public Accommodation claims are **DISMISSED with prejudice**;

- Plaintiff's 18 U.S.C. § 241 claims are **DISMISSED with prejudice**;

- Plaintiff's claims based upon conduct against other citizens, are **DISMISSED with prejudice**;

- Plaintiff's Section 1983 federal Defamation-plus and state law Negligence claims against Officer Reed and City of Kent are **DISMISSED without prejudice and with leave to amend**; To state a cognizable Section 1983 "defamation-plus" claim, a plaintiff must allege an injury to plaintiff's reputation from a defamatory statement, accompanied by an allegation of injury to a recognizable property or liberty interest. *Crowe v. County of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010). A plaintiff can meet this standard by alleging (1) "that the injury to reputation was inflicted in connection with a federally protected right" or (2) "that the injury to reputation caused the denial of a federally protected right." *Id.* (citing *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999). Plaintiff is **granted leave to amend** to correct, if possible, the deficiencies identified in plaintiff's Section 1983 federal defamation-plus and state law negligence claims against Officer Reed and City of Kent.

- Plaintiff shall have until **July 30, 2021** to file an amended complaint. If plaintiff chooses not to file an amended complaint, the Court will proceed with plaintiff's Fourth Amended Complaint as the operative complaint.

Dated this 9th day of July, 2021.


*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge