UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM L HARRIS ,

                Plaintiff,

    v.

CITY OF KENT et al.,

                Defendants.

Case No. 2:20-cv-01045-RSM-TLF

REPORT AND
RECOMMENDATION

Noted for March 25, 2022

This matter comes before the Court on defendants' motion for summary judgment (Dkt. 104) and plaintiff's cross-motion and response (Dkt. 109). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth herein, the Court should GRANT defendant's motion for summary judgment (Dkt. 104) and DENY plaintiff's cross-motion for summary judgment (Dkt. 109). The Court should DISMISS plaintiff's remaining claims with prejudice. If the Court grants summary judgment, plaintiff's other pending motion should be denied as moot. Dkt. 113 (motion to compel).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutionally protected rights during his arrest. Dkt. 78, Fifth Amended Complaint.

1

2    The Court previously denied plaintiff's motion for summary judgment (Dkt. 45)

3    and granted in part and denied in part defendants' motion for summary judgment (Dkt.

4    55). Dkt. 69, Order on Motions for Summary Judgment. The Court dismissed plaintiff's

5    Fourth Amendment claim for unlawful search and arrest, Equal Protection Claims,

6    public accommodation claims, and conspiracy claims, with prejudice. Dkt. 69. The Court

7    also dismissed plaintiff's Section 1983 defamation and negligence claim without

     prejudice and with leave to amend. Dkt. 69.

8    The Court granted plaintiff's motion for leave to file amended complaint. Dkt. 77,

9    Order Granting Plaintiff's Motion for Leave to File Amended Complaint. Plaintiff's Fifth

10   Amended Complaint raises the following claims: Fourth Amendment Excessive Force

11   Claims against Officers Reed and Nixon, a Section 1983 Federal Defamation-Plus

12   Claim against Officer Reed and a Negligence claim against the City of Kent. Dkt. 78,

13   Fifth Amended Complaint; Dkt. 81, Order on Plaintiff's Fifth Amended Complaint and

14   Defendants' Oral Motion for Clarification.

15   During the events underlying this litigation, Officers Reed and Nixon were

16   equipped with body-worn cameras. Dkt. 16, 17, 49.

17   The footage from Officer Reed's body camera begins while Officer Reed was still

18   in his patrol vehicle -- before he approached plaintiff's parked vehicle. Officer Reed's

19   Body-Worn Camera Footage; Dkt. 47-2 at 00:08. The footage shows Officer Reed

20   approached plaintiff's vehicle with a flashlight and attempted to look into the vehicle. *Id.*

21   at 00:39-00:52. Officer Reed then knocked on the back-passenger side window. *Id* at

22   00:52-01:03. After knocking, Officer Reed took a step away from the vehicle and put on

23   a pair of gloves. *Id.* at 01:00-01:16.

24

25

REPORT AND RECOMMENDATION - 2

1    After waiting about twenty seconds, Officer Reed knocked on the window again

2    and stated "Let's go open the door man. I can't see what you're doing and you're

3    freaking me out, so open the door." Dkt. 47-2 at 01:16-01:23. Officer Reed waited

4    approximately ten seconds before stating "Okay stop digging around or I'm going to

5    break the window and pull you out." Dkt. 47-2 at 01:23-01:39.

6    From inside the vehicle, plaintiff appeared to say, "I'm getting my shorts." *Id.* at

7    01:38-01:39. Officer Reed stated "I can't hear you. Open the door." *Id.* at 01:39-01:43.

8    Plaintiff continued to speak, but it is unclear what plaintiff said. *Id.* at 01:43-01:45.

9    Next, Officer Reed said, "You have three second before I break this window."

10    Dkt. 47-2 at 01:45-01:49. Plaintiff continued to state that he was just getting his shorts.

11    *Id.* at 01:45-01:50. Officer Reed counted one and waited five seconds before counting

12    two. *Id.* 01:48-01:55. During this time, plaintiff responded, "I'm getting my shorts" and

13    "Come on man I'm a former police officer myself, can't I just get my shorts on." *Id.* at

14    01:54-02:03. Officer Reed responded "No, open the door now." *Id.* at 02:03.

15    Plaintiff opened the door and repeated "I'm just getting my shorts man." Dkt. 47-2

16    at 02:03-02:08. Once plaintiff opened the door, it appears that he was sitting in his

17    vehicle covered with a blanket from the waist down. *Id.* at 02:08. Officer Reed instructed

18    plaintiff to get out of the vehicle. *Id.* at 02:11. Plaintiff responded, "But I've got nothing

19    on." *Id.* at 02:11.

20    Officer Reed told plaintiff "Step out or I'm going to drag you out" and counted

21    one. *Id.* at 02:11-02:13. Plaintiff stated, "I'm a former police officer myself, all I'm putting

22    on is some shorts officer, can I get some dignity and put my shorts on." *Id.* at 02:13-

23

24

25

REPORT AND RECOMMENDATION - 3

02:19. At this point Officer Reed informed plaintiff that he was being audio and video recorded. *Id* at 02:19.

Plaintiff reiterated that he would like to put his shorts on. Dkt. 47-2 at 02:25. Officer Reed asked plaintiff where his shorts were located, and plaintiff indicated that they were in the back of the car under the blanket. *Id.* at 02:22-02:25. Officer Reed declined plaintiff's request, stating "you are not digging for anything inside this car" and instructed plaintiff to exit the vehicle. Dkt. 47-2 at 02:25-02:30. Officer Reed told plaintiff that plaintiff was impeding Officer Reed's investigation and that he would arrest plaintiff for obstruction if plaintiff did not exit the vehicle. *Id.* at 02:30-02:38.

Plaintiff sat up on the edge of the seat facing out of the vehicle, holding the blanket that was covering his legs, stating that he is a former police officer and that he just wanted to put his shorts on. Dkt. 47-2 at 02:38-02:43. Officer Reed grabbed plaintiff's right wrist and shoulder to pull him out of the vehicle and instructed plaintiff to put his hands behind his back. *Id.* at 02:43-02:50.

When plaintiff was standing, Officer Reed stood behind him; Officer Reed held plaintiff's wrists -- and instructed plaintiff to drop the items in his hands. *Id.* at 02:50-03:00. Plaintiff stated he was just trying to put his shorts on, that he had been parked there for months without a problem and that he wasn't doing anything wrong. *Id.* 03:00-03:20. Officer Reed explained that plaintiff was impeding his investigation and directed plaintiff to interlace his fingers. *Id.* at 03:00-03:20.

Officer Reed asked Officer Nixon to assist in placing hand cuffs on plaintiff's wrists. Dkt. 47-2 at 03:27-03:33. Officer Nixon helped hold plaintiff's hands while Officer Reed applied the handcuffs. *Id.* While the officers were handcuffing plaintiff, plaintiff

asked why he was being arrested; Officer Reed informed plaintiff he was being arrested for obstructing Officer Reed's investigation. *Id.* at 03:33-03:42.

After the officers secured the handcuffs on plaintiff, while he was still standing next to the vehicle, Officer Reed informed plaintiff that Officer Nixon would grab plaintiff's shorts from the vehicle. *Id.* at 03:55-03:57. Plaintiff told Officer Nixon where he could find his shorts; Officer Nixon grabbed plaintiff's shorts and assisted him in putting on the shorts while still handcuffed. *Id.* at 03:57-4:40.

Once plaintiff's shorts were on, Officer Reed walked plaintiff to Officer Reed's patrol vehicle, asked plaintiff to sit in the vehicle and read plaintiff his Miranda Rights from a booklet. *Id.* at 4:40-5:40. While Officer Reed read from his booklet, plaintiff requested that a police sergeant come to the scene. *Id.* at 05:32. Officer Reed did not respond to plaintiff's request.

After reading from the booklet, Officer Reed explained to plaintiff that he observed electrical cords running from a light pole to plaintiff's vehicle which constituted theft of services. Dkt. 47-2 at 05:42-05:48. Plaintiff responded that if there was an issue with the power cords, he would take care of it. *Id.* at 05:48-05:55. Officer Reed recorded plaintiff's contact information and informed him that he was being arrested for obstruction. *Id.* at 05:55-6:58.

Officer Reed informed plaintiff that he could request to speak to a sergeant in jail and closed the door to the patrol car. *Id.* at 06:52-07:00. The officers then checked the camper trailer and another vehicle parked near plaintiff's vehicle, but found no occupants in the vehicles. *Id.* at 07:05-11:15.

1    While still at the scene of the arrest, Officer Reed received a phone call. Dkt. 47-

2    2 at 11:55. Officer Reed answered and stated "Yeah, perfect, perfect, so you are

3    responsible for the shopping center up here? Do you mind if I put you on speaker phone

4    and record you?" *Id.* at 11:55-12:15. Officer Reed then put the phone on speaker and

5    had the following conversation:

> Officer Reed: Um so, now that I've got you on speaker phone, I just
> wanted to let you know you are being audio and video recorded even
> though it's just on the phone. So, you guys are responsible for the whole
> property complex up here?
>
> Caller: Yes
>
> Officer Reed: Okay, so we have a camper trailer and a car parked next to
> the camper trailer that is plugged into one your guys' streetlights, like the
> parking lot lights and they are stealing electricity.
>
> Caller: Okay
>
> Officer Reed: And we were just wondering … I've got one of them
> detained in the back of my patrol car and I was just wondering if you
> wanted to prosecute for theft.
>
> Caller: Yes
>
> Officer Reed: Okay, um also, so he is going to go to jail because he wasn't
> very happy with the police asking him questions in the first place, so as
> long as you are willing to prosecute, I will get your information. I can't tow
> his car however; it's just going to stay here. I'll unplug the thing if I can do
> it safely, but it's going to be your guys' responsibility to get it moved if you
> need it moved.
>
> Caller: Yeah, we'll get it towed. I'll get ahold of my day porter.
>
> Officer Reed: Okay just so you can tell him too, there's also like a 20-foot
> camper trailer here that's plugged into the same power pole.
>
> Caller: That's unrelated to the party that you are detaining?
>
> Officer Reed: Correct yup
>
> Caller: Alright

REPORT AND RECOMMENDATION - 6

Dkt. 47-2 at 12:35-13:58.

Next, Officer Reed wrote down the caller's contact information. Dkt. 47-2 at 13:58-15:30. The caller identified himself as Curt Thormburg, the property manager for JLL Property Management. *Id.*

When Officer Reed returned to his patrol vehicle, he removed his body-worn camera and placed it on the ceiling of the vehicle so that he and plaintiff would be on screen during the drive to the jail. Dkt. 47-2 at 29:41-30:05. While Officer Reed was writing on a notepad in the patrol vehicle, plaintiff requested to speak to the sergeant, watch commander, the division commander and chief of police. *Id.* at 37:14-37:20. Officer Reed placed a call informing the recipient of the call that plaintiff was requesting to speak to a sergeant. *Id.* at 39:20-39:40.

Officer Reed informed plaintiff that Officer Reed's sergeant declined to speak with plaintiff. *Id.*at 39:40-39:48. During the drive to the jail, plaintiff requested that Officer Reed adjust plaintiff's handcuffs because they were uncomfortable and cut into his arm; Officer Reed informed plaintiff that he could sit sideways or place his hands in the cutouts. *Id.* at 40:02-47:09. Plaintiff sat sideways for the rest of the drive but did not make any further comments or requests regarding the handcuffs. *Id.* at 47:09-55:32.

Defendants have filed a motion for summary judgment in this action arguing that the City of Kent, Officer Nixon, and Officer Reed, are entitled to summary judgment on all issues in the case. Dkt. 104. In the alternative, defendants argue that Officer Reed and Officer Nixon are entitled to qualified immunity. *Id.* Plaintiff has filed a cross-motion for summary judgment Dkt 109.

1

DISCUSSION

2    Summary judgment is supported if the materials in the record "show that there is

3  no genuine issue as to any material fact and that the movant is entitled to judgment as a

4  matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party

5  bears the initial burden to demonstrate the absence of a genuine dispute of material fact

6  for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute

7  concerning a material fact is presented when there is sufficient evidence for a

8  reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

9  *Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is

10  "relevant to an element of a claim or defense and whose existence might affect the

11  outcome of the suit"; thus, materiality is "determined by the substantive law governing

12  the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

13  (9th Cir. 1987).

14    The non-moving party is required to show that genuine issues of material fact

15  "'can be resolved only by a finder of fact *because they may reasonably be resolved in*

16  *favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan*

17  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

18  250) (emphasis in original). When the Court considers a motion for summary judgment,

19  "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

20  be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the

21  jury's function – the Court may not weigh evidence, draw legitimate inferences from

22  facts, or decide credibility. *Id.* If the moving party meets their initial burden, an adverse

23  party may not rest upon the mere allegations or denials of his pleading; his or her

24

25

response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

42 U.S.C. § 1983 provides "a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

To state a claim under Section 1983, a plaintiff must set forth the specific factual basis upon which the plaintiff claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of officials participating in a civil rights violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of Regents,* 673 F.2d 266, 269 (9th Cir. 1982).

A government official is entitled to qualified immunity under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* ___

1    U.S. ___, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

2    (2012)). A right is "clearly established" when existing precedent places the "statutory or

3    constitutional question beyond debate" such that every reasonable officer would

4    understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

5        When qualified immunity is reviewed in the context of a defense motion for

6    summary judgment, the evidence must be considered in the light most favorable to the

7    plaintiff with respect to central facts.  *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

8    curiam). If there is a genuine issue of material fact concerning both: (1) Whether it

9    would be clear to a reasonable officer that their conduct was unlawful under the

10   circumstances they confronted, and (2) Whether the defendant's conduct violated a

11   constitutional right" then summary judgment granting qualified immunity is not

12   appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

13       A. <u>Motion for Leave to File Surreply</u>

14       Plaintiff has filed a motion for leave to file surreply. Dkt. 112.

15       Plaintiff's motion argues that the Court should grant leave to file a surreply

16   because defendants' reply contends that plaintiff has failed to set forth material facts

17   that are in dispute. Dkt. 112 at 1. Plaintiff also argues that defendants have disclosed

18   that the officers ran a computer records check on plaintiff's license plate on the date of

19   the arrest. Dkt. 112 at 1. Plaintiff contends that this fact was not previously disclosed

20   and was not addressed in the parties' briefing. *Id.* Plaintiff requests that the Court strike

21   defendant's reply brief, order the defendants to provide a full accounting of the officers'

22   actions at the scene of plaintiff's arrest and order defendants to explain why this

23   information was not previously disclosed. *Id.* at 3.

24

25

Pursuant to Local Rule 7(g), a party may file a surreply requesting that the Court strike materials contained in or attached to a reply brief. The surreply must be strictly limited to addressing the request to strike, the Court cannot consider any other extraneous arguments. LCR 7(g)(2). When new evidence is presented in a reply brief, the court should not consider the new evidence without giving the non-movant the opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996).

Plaintiff's motion does not identify any new facts or evidence that were allegedly improperly introduced in defendants' reply brief. Defendants' argument that plaintiff failed to set forth material facts in dispute is not a new statement of fact or new evidence, it is an argument regarding the standard on a motion for summary judgment. Next, plaintiff argues that defendants failed to disclose certain facts regarding whether the officers ran a computer check of plaintiff's license plates on the date of the arrest. However, this information is not currently in the record before the Court and was not raised in defendants' reply brief. Accordingly, because this issue was not raised in the challenged reply brief, the Court cannot consider this issue in a surreply.

The Court should DENY plaintiff's motion for leave to file surreply. Dkt. 112.

B.  Excessive Force

Plaintiff alleges that Officer Reed and Nixon violated plaintiff's rights by using excessive force during plaintiff's arrest and handcuffing. Dkt. 78.

When an excessive force claim arises in the context of an arrest, the claim is most properly characterized as invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Tenn. v. Garner*, 471 U.S. 1, 5 (1985)).

. Determining whether the force used is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). There is no "easy-to-apply legal test" for determining whether the amount of force used was reasonable, instead the Court must analyze "the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). The ultimate question, regardless of the amount of force used, is whether the use of force and the officer's actions were reasonable under the circumstance presented. *Id.*

The Court must determine "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (internal citations omitted).

The United States Supreme Court set out the following factors to consider when evaluating the government interest at stake; (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The most important factor is whether the suspect posed an immediate threat to the officer. *Williamson*, 23 F.4th at 1153. These factors are not exhaustive, and the Court must consider the totality of the circumstances. *Id.* Even if governmental interest is low and even if resistance is passive, some degree of force may still be deemed necessary to attain compliance. *Id.*

When determining the severity of the physical force used, the Court must consider the nature and degree of physical contact as well as the "risk of harm and the

actual harm experienced." *Id.* at 1152. The Court cannot focus solely on the plaintiff's injury -- the Court must evaluate the type and amount of forced used as well as the risk of harm that the use of force created. *Id.* In situations where the <u>risk of harm</u> is objectively less significant than the <u>actual resulting harm</u> – or, where a person reacts more adversely to use of force than would objectively be expected – such circumstances do not establish excessive force. *Id.* at 1153.

In *Williamson v. City of National City*, the Ninth Circuit held that handcuffing, lifting, pulling, and dragging, a non-compliant plaintiff, which resulted in a sprained wrist and torn rotator cuff, was not a significant use of force. 23 F.4th at 1152-53 (noting that yanking, pulling jerking and twisting a non-compliant person as well as using pain compliance techniques against a person have been deemed minimal intrusions) (citing *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994); *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018)).

In this case, the Court should find that the severity of the physical force used is low. First, plaintiff alleges minor injuries – pain, bruising and swelling. Dkt. 78. Although these injuries are not trivial, they are less severe than the injuries that the Ninth Court found minimal in *Williamson*. The body camera footage shows that Officer Reed pulled plaintiff out of the vehicle while holding plaintiff's wrist and shoulder. Dkt. 47-2, at 02:43-2:50. It does not appear from the video that Officer Reed jerked, yanked or otherwise forcefully pulled plaintiff from the vehicle. *Id.*

Additionally, the video does not show that Officer Reed or Officer Nixon twisted plaintiff's wrists while handcuffing plaintiff. *Id.* at 02:50-03:33. Plaintiff alleges that Officer Reed placed handcuffs on plaintiff that were too tight and caused bruising. Dkt.

78. The risk of harm from handcuffing an individual and the actual harm suffered by plaintiff are both minimal. The force used in this case is less severe and less harmful than the force found to be minimal force in *Williamson*.

Next, the Court should find that relative weight of the government's interest is consistent with the officers' use of force, risk of harm, and the amount of force. The crimes at issue are misdemeanor offenses – theft of electricity and obstruction of a public officer. RCW 9A.56.050 (theft of electricity); KCC 9.02.630 (obstruction of a public officer). Plaintiff posed a potential threat to Officer Reed while plaintiff was still in the vehicle with the door closed. But after plaintiff was out of the vehicle and handcuffed, it appears he no longer posed a threat to either officer.

There is no evidence in the record indicating that plaintiff was actively attempting to evade the officers, and the only resistance plaintiff posed was arguing with the officers. Yet the government has an interest in allowing officers to handcuff arrested individuals to protect officers while investigating an incident, and while transporting the arrested individual.

Based on the foregoing, the Court should find that the government's interest in use of force was low. The Court should find that balancing the interests in this case, the force used by Officers Reed and Nixon was appropriately minimal. Accordingly, the Court should find that there is not a genuine dispute of material facts regarding whether Officers Reed and Nixon used excessive force in violation of plaintiff's Fourth Amendment rights. There is not sufficient evidence for a reasonable jury to return a verdict for plaintiff, the non-moving party. Additionally, because the Officers did not use

excessive force in violation of plaintiff's rights, Officer Reed and Officer Nixon are entitled to qualified immunity as a matter of law.

No genuine issues of fact remain in this action on plaintiff's excessive force claim. Officers Reed and Nixon are entitled to qualified immunity on this issue. The Court should GRANT defendant's motion for summary judgment and DENY plaintiff's motion for summary judgment with respect to plaintiff's excessive force claim. The Court should dismiss this claim with prejudice.

### C. Federal Defamation-Plus

Plaintiff alleges that Officer Reed's comments to Curt Thornburg after plaintiff's arrest amount to Federal Defamation. Dkt. 78.

To state a cognizable Section 1983 "defamation-plus" claim, a plaintiff must allege an injury to plaintiff's reputation from a defamatory statement, accompanied by an allegation of injury to a recognizable property or liberty interest. *Crowe v. County of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010). A plaintiff can meet this standard by alleging (1) "that the injury to reputation was inflicted in connection with a federally protected right" or (2) "that the injury to reputation caused the denial of a federally protected right." *Id.* (citing *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

Plaintiff states that the defamation plus claim is based on Officer Reed reporting to Curt Thornburg that plaintiff had been caught stealing electricity. Dkt. 78. Plaintiff also alleges that Officer Reed committed defamation by stating that plaintiff did not want to talk to the police. *Id.*

Plaintiff's Fifth Amended Complaint does not allege any facts identifying a defamatory statement that injured plaintiff's reputation in connection with a federally protected right or that caused the denial of a federally protected right. Additionally, plaintiff has not submitted evidence that any of his federally protected rights were injured by any alleged defamatory statement. Based on the foregoing the Court should find that plaintiff has failed to establish a Section 1983 defamation claim and that Officers Reed and Nixon are entitled to qualified immunity on this issue.

No genuine issues of fact remain in this action supporting plaintiff's federal defamation claim. Accordingly, the Court should GRANT defendant's motion for summary judgment and DENY plaintiff's motion for summary judgment with respect to plaintiff's defamation plus claims. The Court should dismiss this claim with prejudice.

D. <u>Negligence</u>

Plaintiff alleges that the City of Kent committed negligence by knowingly allowing officers to violate his rights. Dkt. 78.

Plaintiff's Fifth Amended Complaint does not clearly identify the basis of his claim of negligence against the City of Kent. Dkt. 78. First, plaintiff alleges that the City Kent was negligent because the City was aware that several officers were engaging in "questionable arrests" which affected members of the community. Generally, a litigant may only assert their own legal rights and cannot rest a claim for relief on the legal rights or interest of a third party. *Coalitions of Clergy v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002). Third party standing is only proper when a litigant can establish that: (1) the litigant has suffered an injury in fact; (2) the litigant has a close relationship to the third party; and (3) there is some hindrance to the third party asserting their own rights.

*Serena v. Mock*, 547 F.3d 1051, 1054 (9th Cir. 2008). Plaintiff's Fifth Amended

Complaint does not allege any facts indicating that third party standing would be

appropriate in this action. There is no evidence in the record to support plaintiff's

standing to bring claims on behalf of other people allegedly affected by conduct

separate from the events underlying this litigation.

Next, the Fifth Amended Complaint alleges that the City of Kent acted negligently

because the City "dragged its feet" in addressing alleged systemic problems within the

Kent Police Department. Dkt. 78. To prevail on a negligence claim, a plaintiff must

show, (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting

injury, and (4) breach of the duty as the proximate cause of the injury. *Mancini v. City of

Tacoma*, 196 Wn.2d 864, 879 (2021).

Plaintiff's Fifth Amended Complaint does not state facts alleging that the City of

Kent owed him a duty, that the City of Kent breached any alleged duty or that any

breach proximately caused an injury. Additionally, there is no evidence in the record that

supports plaintiff's claims of negligence in this action.

To the extent that plaintiff basis his negligence claim on the City of Kent's alleged

duty to reform policies or supervise officer conduct, this argument fails under the public

duty doctrine. Under the public duty doctrine, to raise a claim for negligence against a

governmental entity, a plaintiff must show that an alleged duty was owed to the

individual claimant rather than the public at large. *Washburn v. City of Federal Way*, 178

Wn.2d 732, 754 (2013) ("Where the plaintiff claims the governmental entity has

breached a duty owed to the public in general, he or she may not recover in tort for lack

of an actional legal duty.").

Based on the foregoing, the Court should dismiss plaintiff's negligence claim because plaintiff has not presented any evidence or factual allegations that the City of Kent owed plaintiff a legally recognized duty or that the City of Kent violated any alleged duty. The Court should GRANT defendants' motion for summary judgment and DENY plaintiff's motion for summary judgment on this issue. The Court should dismiss this claim with prejudice.

E.  Plaintiff's Cross-Motion

Plaintiff's motion for summary judgment request that the Court grant summary judgment in his favor finding that defendants violated plaintiff's right to be free from unreasonable seizure. To the extent that plaintiff is requesting that the court grant summary judgment on the issue of the legality of the officers' initial investigatory stop and subsequent arrest, the Court should deny plaintiff's motion. The Court has previously dismissed these claims with prejudice. Dkt. 69, Order on Motions for Summary Judgment; Dkt. 75 Order Denying Motions for Reconsideration.

CONCLUSION

Based on the foregoing, the Court should GRANT defendants' motion for summary judgment (Dkt. 104) and dismiss plaintiff's claims with prejudice. The Court should DENY plaintiff's cross motion for summary judgment (Dkt. 109) and DENY plaintiff's motion for leave to file a surreply (Dkt. 112). The Court should DENY plaintiff's motion to compel disclosure (Dkt. 113) as moot.

The parties have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have fourteen (14) days from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on March 25, 2022, as noted in the caption.

      Dated this 11th day of March, 2022.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19